DENNIS W. NICHOLS, ADMINISTRATOR (ESTATE OF RYAN NICHOLS) *v.* SALEM SUBWAY RESTAURANT ET AL.
(AC 26969)

Flynn, C. J., and DiPentima and Dupont, Js.

Argued September 20—officially released December 26, 2006

*Christopher P. Anderson*, with whom, on the brief, was *Michael L. Anderson*, for the appellant (plaintiff).

*John C. Pitblado*, with whom were *John B. Farley*, and, on the brief, *Daniel P. Scapellati*, for the appellee (State Farm Mutual Automobile Insurance Company).

*Opinion*

DiPENTIMA, J. The plaintiff, Dennis W. Nichols, administrator of the estate of his late son, Ryan Nichols, appeals from the summary judgment rendered by the trial court in favor of the defendant State Farm Mutual

Automobile Insurance Company[1] in this action to recover uninsured-underinsured motorists benefits. The court granted the defendant's motion for summary judgment after concluding that there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law because the automobile insurance policy (policy) at issue clearly and unambiguously did not provide the plaintiff's decedent coverage under the circumstances. On appeal, the plaintiff contends that the court improperly determined that the monetary limits on the uninsured-underinsured motorist policy had been reduced by amounts paid to a third party under the same policy's liability coverage. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The plaintiff's decedent was the driver of a motor vehicle involved in a multiple car collision. He died in the accident. Lee Trahan and Jennifer Stover were passengers in the decedent's car when the decedent lost control of his car. Both Trahan and Stover sustained serious injuries, and Trahan died as a result of her injuries. At the time of the accident, the vehicle operated by the decedent was insured by the defendant under an automobile liability policy of insurance that provided liability limits of $500,000 and uninsured-underinsured motorist coverage limits of $500,000. Claims against the decedent's estate were filed by Stover and the estate of Trahan. The defendant paid a total of $500,000 to settle those two claims filed against the decedent's estate. The plaintiff then brought an action against the

---

[1] The plaintiff also named Salem Subway Restaurant, Geoffrey Dressler, Doctor's Associates, Inc., Timothy Kaplan, Norman Kaplan, Joel A. Tudisco and Jason Sweet as defendants, but they were not parties to the motion for summary judgment that is the subject of this appeal. Accordingly, "defendant" refers only to State Farm Mutual Automobile Insurance Company.

defendant seeking to recover uninsured-underinsured motorist benefits pursuant to the decedent's policy.[2]

The defendant filed a motion for summary judgment, claiming that according to the unambiguous language of the policy, the plaintiff had recovered all of the liability benefits to which he was entitled. On September 8, 2005, the court issued a memorandum of decision granting the defendant's motion for summary judgment. The court concluded that the defendant was not liable to the plaintiff for uninsured-underinsured motorist benefits because the $500,000 in liability payments that it had already paid out to settle third party claims against the plaintiff reduced the uninsured-underinsured coverage under the policy to zero. The court further concluded that § 38a-334-6 (d) (1) (C) of the Regulations of Connecticut State Agencies allowed for such a reduction.

The plaintiff subsequently filed the present appeal, claiming that the court improperly rendered summary judgment in favor of the defendant. Specifically, the plaintiff claims that the court improperly interpreted the language of the insurance policy and the requirements set forth in § 38a-334-6 (d) (1) (C) to allow for a reduction in uninsured-underinsured benefits. We disagree.

We begin by setting forth our familiar standard of review. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable

[2] Two of the other three vehicles involved in the accident were being operated by uninsured drivers. The plaintiff brought suit against the other three vehicle operators, but that case had not been resolved at the time of this appeal.

to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary."[3] (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 6–7, 882 A.2d 597 (2005).

In addition, because this appeal involves questions of construction regarding an insurance policy and state regulation, we set forth our well established standard of review relevant to those issues. "Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . Unlike certain other contracts, however, where absent statutory warranty or definitive contract language the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . Moreover, we have concluded that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes." (Citation omitted; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 174, 713 A.2d 1269 (1998). The interpretation of a state regulation is an issue of law over which our review is plenary. See *Executive Services, Inc.* v. *Karwowski*, 80

---

[3] In exercising our plenary review, we note that the memorandum of decision of the court, *Beach, J.*, was particularly thorough and well reasoned.

Conn. App. 124, 126, 832 A.2d 1212 (2003), cert. denied, 268 Conn. 908, 845 A.2d 411 (2004). On appeal, we must determine whether the reduction in benefits is authorized by the language of the policy and whether that language comports with § 38a-334-6 (d) (1) (C).[4]

The question of whether an insurer may reduce uninsured-underinsured benefits by amounts paid under its liability coverage pursuant to § 38a-334-6 (d) (1) (C ) is one of first impression. We are guided, however, by previous judicial interpretations of § 38a-334-6 (d) (1) and analyses of the public policy behind uninsured-underinsured motorist coverage. We begin our analysis with the relevant provision of the insurance contract that governs uninsured-underinsured motorist benefits, which provides: "Any amount payable under this coverage shall be reduced by any amount . . . paid to or for the insured for bodily injury under the liability coverage . . . ." Bodily injury is defined in the policy as "bodily injury to a person and sickness, disease or death which results from it." The policy defines "person" as "a human being."

The plaintiff argues that the relevant language of the policy is ambiguous and not substantially congruent with § 38a-334-6 (d) (1) (C). In support thereof, the plaintiff cites to specific phrases contained in the policy. First, the plaintiff contends that the reference to "bodily injury" purports to reduce coverage only when the insured has received payment for his own bodily injury. The plaintiff suggests that because payments were made to others, the policy does not allow for a reduction in coverage for the insured. We cannot agree with that reasoning, as there is no indication in the language of

---

[4] As liability has not been determined in any pending suit, we agree with the court that § 38a-334-6 (d) (1) (A) is not applicable to the facts of this case. Section 38a-334-6 (d) (1) (A) allows for a reduction in benefits when damages have been "paid by or on behalf of any person responsible for the injury . . . ."

the policy to indicate that bodily injury refers only to injuries of the insured. In fact, this court previously has rejected a similar argument when presented in the insurance context with regard to a challenge to the validity of § 38a-334-6. See *Allstate Ins. Co.* v. *Lenda*, 34 Conn. App. 444, 455, 642 A.2d 22 ("the phrase 'the injury' relates to the person who paid or on whose behalf damages have been paid"), cert. denied, 231 Conn. 906, 648 A.2d 149 (1994). Although it is possible to derive an alternate interpretation from the term "bodily injury," it would not necessarily alter the plain and unambiguous meaning of that term as used in this context. It is a basic tenet of insurance policy interpretation that "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 764, 621 A.2d 258 (1993).

The plaintiff next argues that because the payments were made to other parties, that they technically were not made "for the insured," as that phrase is used in the policy. To give those terms the meaning suggested by the plaintiff would be an abstract exercise in semantics and formal logic, resulting in this court essentially rewriting the policy. That we cannot do. See *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 591, 573 A.2d 699 (1990). In arriving at that conclusion, we are mindful of the Connecticut rule of construction of insurance policies. "If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and the courts cannot indulge

in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 15, 615 A.2d 1032 (1992). Moreover, we note that "the meaning of policy language ordinarily is drawn from the context in which it is used [and] [t]here is no presumption that language in insurance contracts is inherently ambiguous." (Citation omitted; internal quotation marks omitted.) *Mallozzi* v. *Nationwide Mutual Ins. Co.*, 72 Conn. App. 620, 626–27, 806 A.2d 97, cert. denied, 262 Conn. 915, 811 A.2d 1292 (2002).

The relevant language in the policy is plain and unambiguous and therefore must be given its natural and ordinary meaning. As such, "bodily injury" refers to injury to the insured or others and "paid to or for the insured" includes payments made to others on behalf of the insured. We conclude, therefore, that the language of the policy was properly interpreted by the court as providing a reduction for benefits paid under its liability plan. That conclusion, however, does not end our analysis. We must next determine whether that reduction is authorized by § 38a-334-6 (d) (1) (C).

"[I]f the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation. . . . In order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision." (Citation omitted; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 176; *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992).

Section 38a-334-6 (d) (1) provides in relevant part that "[t]he limit of the insurer's liability may not be

less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . (C) paid under the policy in settlement of a liability claim." The plaintiff attempts to show an incongruence between the policy language and the regulation on the basis of the policy's allowing for a reduction for payments made to or for the insured under the policy's "liability coverage" rather than for payments made to or for the insured pursuant to a "settlement" as set forth in the regulation. We are not persuaded. The change merely reflects the defendant's attempt to combine the provisions of § 38a-334-6 (d) (1) (A) and (C), rather than to substantially alter the material phrase of the regulation. Moreover, in the present case there is no judgment, and payment was made pursuant to settlement agreements made on behalf of the insured. We conclude that § 38a-334-6 (d) (1) (C) and the terms in the policy issued by the defendant correspond in all material respects and that there is substantial congruence between the regulatory provision and the policy provision.[5] Consequently, because § 38a-334-6 (d) (1) (C) permits a reduction for benefits paid to settle a liability claim, the policy language must be deemed to provide the defendant with a legitimate reduction. See *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 174; *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 466, 370 A.2d 1011 (1976).

The plaintiff's final argument in support of his claim is that the public policy of this state to provide minimum

---

[5] The plaintiff also contends that the regulation is ambiguous. Yet, he failed in his brief and during oral argument to articulate that ambiguity. His interpretation of § 38a-334-6 (d) (1) (C) to mean that a reduction is allowed only if "the insured has already received compensation" finds no support in the language of the regulation. We perceive no ambiguity in the clear language of the regulation.

benefits through uninsured-underinsured motorist coverage would be circumvented should § 38a-334-6 (d) (1) (C) allow for a reduction in uninsured-underinsured benefits.[6] That argument is unavailing. "The legislature speaks on matters of public policy through legislative enactments and through the promulgation of regulations by state agencies as authorized by statute." *Autotote Enterprises, Inc.* v. *State*, 278 Conn. 150, 160, 898 A.2d 141 (2006); see, e.g., *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 136–37, 855 A.2d 964 (2004). The language of the regulation is unambiguous and clearly expresses the public policy of the state to allow for a reduction of benefits in certain circumstances such as the one involved in the present case. Moreover, as our Supreme Court has noted, our established uninsured-underinsured law in Connecticut as embodied in General Statutes § 38a-336 "does not require that uninsured motorist coverage be made available when the insured has been otherwise protected . . . . Nor does the statute provide that the uninsured motorist coverage shall stand as an independent source of recovery for the insured, or that the coverage limits shall not be reduced under appropriate circumstances. The statute merely requires that a certain minimum level of protection be provided for those insured under

---

[6] The plaintiff presents a series of hypothetical situations in an attempt to bolster his public policy argument. As our Supreme Court has reasoned with respect to the public policy behind uninsured-underinsured motorist coverage, "[c]ommencing with our earliest interpretation of § 38a-334-6 (d), we have recognized that in attempting to accomplish the twin policy objectives of uninsured motorist coverage of providing coverage as if the tortfeasor had been adequately insured, and at the same time precluding double recovery, the regulations of the insurance commissioner may present some apparently anomalous results under certain circumstances. . . . As a result of the application of § 38a-334-6 (d), injured individuals have often been left in different positions, some better and some worse, depending on various factors relating to the limits of coverage and available resources. . . . This is a necessary, and not unacceptable, reality of this state's uninsured motorist scheme." (Citations omitted; internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 190.

automobile liability insurance policies; the insurance commissioner has been left with the task of defining those terms and conditions which will suffice to satisfy the requirement of protection." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 184. Although we are often asked to do so, we cannot assert ourselves into the realm of legislative policy making by substituting our judgment for that of the legislature.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In his brief to this court, the plaintiff claims, for the first time, that he was denied due process of law as a result of not being afforded the right to have a jury decide a material issue of fact. The plaintiff failed to raise this claim before the trial court and therefore has not preserved it for appellate review. The defendant quotes the familiar criteria under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), to counterargue that the record is inadequate for review of the claim. We agree with the defendant that the inadequate record renders us unable to ascertain the precise basis for this claim. Accordingly, we decline to review the plaintiff's due process claim. See id., 240.