## JAMES J. WILTZIUS *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NEW MILFORD ET AL.
### (AC 27787)
### (AC 27788)
### (AC 27789)

Bishop, McLachlan and Gruendel, Js.

Argued October 15, 2007—officially released February 26, 2008

*Robert A. Fuller*, with whom was *James J. Wiltzius*, pro se, for the appellant in AC 27788 and AC 27789, appellee in AC 27787 (plaintiff).

*Timothy S. Hollister*, with whom was *Ryan K. McKain*, for the appellee in AC 27788 and AC 27789, appellant in AC 27787 (defendant Garden Homes Management Corporation et al.).

*Mark K. Branse* filed a brief for the Connecticut Manufactured Housing Association, Inc., as amicus curiae.

*Opinion*

McLACHLAN, J. The present controversy arises from three separate zoning appeals brought by the plaintiff, James J. Wiltzius, against the defendant zoning board of appeals of the town of New Milford (board) and the defendants Sixth Garden Park Limited Partnership and

Garden Homes Management Corporation,[1] challenging various zoning permits and certificates of zoning compliance issued by the town's zoning enforcement officer in connection with the replacement of mobile homes in the defendants' mobile home park. The plaintiff and the defendants now appeal from the judgment of the trial court dismissing the plaintiff's administrative appeals with respect to nine of the replacements and sustaining his appeal with respect to two of the replacements.[2] In AC 27788 and AC 27789, the plaintiff claims that the court improperly concluded that (1) his appeals to the board with respect to four of the zoning permits at issue were not timely filed and (2) the issuance of a certificate of zoning compliance is not a decision from which an appeal to the board may be brought. In AC 27787, the defendants claim that the court improperly concluded that (1) the plaintiff's appeal to the board with respect to two of the zoning permits at issue was timely filed and (2) the replacement of existing mobile homes with larger mobile homes constituted an illegal expansion of a nonconforming use. We affirm in part and reverse in part the judgment of the trial court.

The underlying facts are largely undisputed. Candle Hill Mobile Home Park was established in 1965. In 1971, zoning regulations were first enacted in the town of New Milford. The mobile home park was placed, and remains, in the R-60 and R-80 residential zones, in which single-family dwellings are permitted on lots of at least 60,000 or 80,000 square feet. When zoning was adopted,

[1] The board was named as a defendant in these actions, but it is not a party to these appeals. We therefore refer to Sixth Garden Park Limited Partnership and Garden Homes Management Corporation as the defendants in this opinion.

[2] Although the plaintiff challenged the permits and certificates issued in connection with eleven replacements of mobile homes in his administrative appeals, only six mobile home replacements are at issue in the appeals before this court.

the mobile home park consisted of 102 mobile manufactured homes on three parcels of land totaling approximately twenty-seven acres. Each mobile home occupies a designated space in the park, but the spaces are not individual lots in an approved subdivision. The regulations adopted in 1971 did not permit mobile home parks in R-60 or R-80 zones so that Candle Hill Mobile Home Park became a nonconforming use at that time.

The defendants became the owners and operators of the mobile home park in 1990.[3] They began to replace some of the older mobile homes with newer mobile homes and, at first, were allowed to make those replacements simply by obtaining zoning permits from the town's zoning enforcement officer. In the summer of 2002, the zoning department informed the defendants that a variance would be required for any future replacements. After they applied for and obtained a variance for the replacement of one of the mobile homes, they applied for another variance to replace three additional mobile homes. On October 15, 2003, the board issued a blanket variance, without notifying abutting property owners and without publishing notice of that decision in a newspaper, allowing the future replacement of mobile homes within the mobile home park. The zoning enforcement officer issued zoning permits for those three mobile homes on October 27, 2003. On February 23, 2004, the zoning enforcement officer issued an additional two zoning permits for replacements at the site. In all, eleven permits were issued for the replacement of eleven mobile homes at the defendants' park.

The plaintiff purchased his residential property, which abuts one of the three parcels occupied by the mobile home park, in 1999.[4] In February, 2004, while

---

[3] Garden Homes Management Corporation is the managing partner of Sixth Garden Park Limited Partnership.

[4] The court found that the plaintiff was statutorily aggrieved by the board's decisions, and that finding has not been challenged on appeal.

looking out of the window of his home, he noticed construction activity in connection with two mobile homes located at 16 Tallow Lane and 18 Tallow Lane. He discovered that the board had issued the blanket variance and appealed from that decision to the board on April 1, 2004. At the same time, he filed a request with the New Milford zoning department pursuant to the Freedom of Information Act, General Statutes § 1-200 et seq., requesting disclosure of any zoning permits that had been filed or issued for the replacement of any of the mobile homes at Candle Hill Mobile Home Park. In response to that request, on April 7, 2004, the plaintiff received copies of nine of the eleven zoning permits issued to the defendants. The nine permits were issued for the replacement of mobile homes located at 4 Wicker Lane, 17 Victory Lane, 16 Tallow Lane, 18 Tallow Lane, 15 Duncan Lane, 19 Duncan Lane, 21 Duncan Lane, 1 Victory Lane and 12 Shadow Lane. On April 8, 2004, the plaintiff filed an appeal with the board, challenging the issuance of those permits.

The board rescinded the blanket variance that had been issued on October 15, 2003, at its meeting held on April 26, 2004. Shortly thereafter, in late May, 2004, the zoning department discovered an additional two zoning permits that had been issued for the replacement of mobile homes located at 10 Tallow Lane and 11 Shadow Lane. Those permits had been misfiled. Within thirty days of their discovery, the plaintiff appealed to the board from the issuance of those two zoning permits.

In June, 2004, the zoning enforcement officer issued certificates of zoning compliance for the mobile home replacements at 4 Wicker Lane, 17 Victory Lane, 16 Tallow Lane and 18 Tallow Lane. The plaintiff appealed to the board from the issuance of those certificates.

On May 19 and June 16, 2004, the board held a public hearing on the plaintiff's appeals from the issuance of

the nine zoning permits by the town's zoning enforcement officer.[5] The plaintiff claimed that the permits were not valid because they were issued in reliance on a variance that was not valid. The plaintiff, his counsel, the president of Garden Homes Management Corporation and counsel for the defendants attended the public hearing, spoke before the board and presented evidence for the board's consideration. The timeliness of the filing of the plaintiff's appeals was an issue raised before the board, and it was addressed by counsel for both parties.

The board issued the following decision on the plaintiff's appeals at its meeting held on July 21, 2004: "[W]e overturn the decision of the [zoning enforcement officer] to issue the following permits: #445-03 for 4 Wicker Lane, #446-03 for 18 Tallow Lane, #447-03 for 17 Victory Lane, #48-04 for 16 Tallow Lane and #47-04 for 15 Duncan Lane. This decision is based on the fact that the permits issued were based on a variance . . . that has been declared void due to a lack of proper public notification." With respect to the permits issued for 21 Duncan Lane, 19 Duncan Lane, 1 Victory Lane and 12 Shadow Lane, the board upheld the zoning enforcement officer's decision because "[i]t is the opinion of the board that the zoning enforcement officer acted properly and that the time frame for an appeal has expired." The defendants did not appeal from the board's decision. The plaintiff's appeal to the trial court challenged only the board's determination that his appeal from the granting of four of the permits, 21 Duncan Lane, 19 Duncan Lane, 1 Victory Lane and 12 Shadow Lane, was not timely.

At the time of the board's decision, the plaintiff's appeals to the board from the zoning enforcement officer's issuance of the certificates of zoning compliance

---

[5] Although the plaintiff filed two separate appeals with the board in connection with the nine permits, the board heard both appeals at the same time.

for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane were still pending. The installation of those four replacement mobile homes had been completed, and the mobile homes had been sold. Also pending before the board was the plaintiff's appeal from the issuance of the misfiled zoning permits for 10 Tallow Lane and 11 Shadow Lane. The board held a public hearing on those appeals on July 26 and September 22, 2004. At the board's meeting held on November 17, 2004, the board issued its decision on the plaintiff's appeals. The decisions made by the zoning enforcement officer were upheld. The plaintiff appealed from those decisions to the Superior Court.

The plaintiff filed three separate administrative appeals to the Superior Court from the board's actions in connection with the issuance of zoning permits and certificates of zoning compliance for the replacement of mobile homes at the defendants' mobile home park. The three cases were consolidated, and the court heard testimony as to aggrievement and oral argument on October 17, 2005. On February 10, 2006, the court filed its memorandum of decision in which it dismissed in part and sustained in part the plaintiff's appeals.

The court found that the plaintiff had constructive notice in February, 2004, of the zoning permits for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane, 17 Victory Lane, 15 Duncan Lane, 19 Duncan Lane, 21 Duncan Lane, 1 Victory Lane and 12 Shadow Lane. For that reason, the court concluded that the plaintiff's appeals to the board from the issuance of those permits were not timely because they were not filed within thirty days of that notice as required by General Statutes § 8-7[6] and that the board did not have jurisdiction to hear

---

[6] General Statutes § 8-7 provides in relevant part: "An appeal may be taken to the zoning board of appeals by any person aggrieved . . . and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing . . . a notice of appeal specifying the grounds thereof. Such appeal period shall

them. The court further found that the plaintiff's appeal from the issuance of the certificates of zoning compliance for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane, which was based on the claim that the permits that had been issued for those four mobile homes were invalid, were without merit. With respect to the misfiled zoning permits for 10 Tallow Lane and 11 Shadow Lane, the court found that the plaintiff's appeal as to those permits had been timely filed because he could not have discovered their existence until those permits were filed properly. The court further found that the town's zoning regulations did not permit enlargements of nonconforming uses and that the replacement of the older mobile homes with larger mobile homes was illegal. The court ordered the board to sustain the plaintiff's appeal with respect to those two permits and to void the subject permits.

The plaintiff and the defendants filed motions for reargument and reconsideration of the court's decision. The court granted the parties' motions and scheduled oral argument for March 28, 2006. On April 5, 2006, the court issued its order on the motions and declined to change or alter any part of its decision.[7] The plaintiff and the defendants filed the present appeals after this

---

commence for an aggrieved person at the earliest of the following: (1) Upon receipt of the order, requirement or decision from which such person may appeal, (2) upon the publication of a notice in accordance with subsection (f) of section 8-3, or (3) upon actual or constructive notice of such order, requirement or decision. . . ."

The New Milford zoning board of appeals has not adopted a rule prescribing the time for filing an appeal. The zoning regulations provide that the board "shall have all the powers and duties as set forth in section 8-5, 8-6 and 8-7 of the Connecticut General Statutes, as revised, hereby incorporated by reference only." New Milford Zoning Regs., c. 195, § 195-010.

[7] The order of the court reads in relevant part: "On the hearing of reargument from all parties on March 28, 2006 . . . and having reconsidered all issues raised by the plaintiff and the defendant in light of the reargument, the court declines to change or alter any part of the decision rendered February 9, 2006, in these three cases."

court granted their petitions for certification.[8] AC 27788 and AC 27789 are the plaintiff's consolidated appeals; AC 27787 is the defendants' appeal. The issues on appeal before this court involve the six mobile homes located at 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane, 17 Victory Lane, 10 Tallow Lane and 11 Shadow Lane.

After the parties' appeals were filed with this court, the defendants filed a motion to dismiss the plaintiff's appeals, claiming that the enactment of No. 07-43 of the 2007 Public Acts (P.A. 07-43), effective May 21, 2007, rendered his appeals moot. The defendants argue that P.A. 07-43 is a clarification of existing law and must be applied retroactively. If the recently enacted legislation applies to this case, the defendants claim, this court is precluded from granting the plaintiff the ultimate relief he seeks.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Segal* v. *Segal*, 264 Conn. 498, 505, 823 A.2d 1208 (2003).

Public Act 07-43 provides in relevant part: "The replacement of a mobile manufactured home in a

[8] The board did not file a petition for certification to appeal with this court. On November 15, 2006, the Connecticut Manufactured Housing Association, Inc., obtained permission from this court to file an amicus curiae brief.

mobile manufactured home park with a mobile manufactured home with the same or different external dimensions that is built in compliance with federal mobile manufactured home construction and safety standards, as amended from time to time, shall not constitute an expansion of a nonconforming use." If P.A. 07-43 applies retroactively, the defendants argue, then the replacement of mobile manufactured homes with mobile homes conforming to federal standards is expressly authorized, and such replacements have never been and are not an illegal expansion of a nonconforming use at Candle Hill Mobile Home Park. Whether P.A. 07-43 applies retroactively is a question of law over which this court has plenary review. See *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 592, 872 A.2d 385 (2005).

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . [I]t is a rule of construction that legislation is to be applied prospectively unless the legislature clearly expresses an intention to the contrary . . . . The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation."

(Citations omitted; internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 620–21, 872 A.2d 408 (2005).

The defendants argue that the language of the public act and its legislative history contain a clear and unequivocal expression of the legislature's intent to clarify existing law. We regularly have recognized the right of the legislature to clarify statutes in response to judicial interpretation, and clarifying legislation can indeed be applied retroactively. *Bhinder* v. *Sun Co.*, 263 Conn. 358, 375, 819 A.2d 822 (2003). In support of their argument that P.A. 07-43 clarifies existing law, the defendants state that the legislation was passed "in direct response to [the plaintiff's] appeals." They further quote the statement of a speaker at the General Law committee public hearing that "[t]he intent of the bill is simply to make clear that this is what the law . . . has always meant . . . ." Conn. Joint Standing Committee Hearings, General Law, testimony of Rafael Podolsky concerning Senate Bill No. 1236, March 1, 2007.

The defendants' claim lacks merit. Public Act 07-43 amended General Statutes § 21-68 by adding the language in the last sentence pertaining to the replacements of mobile homes in mobile home parks.[9] A review

---

[9] General Statutes § 21-68 provides: "Each mobile manufactured home park shall conform to the requirements of the State Building Code, the Fire Safety Code and local ordinances or planning or zoning regulations, if any, provided an applicant for a license for a mobile home park in existence on October 1, 1972, may, with the consent of the Commissioner of Consumer Protection, be exempted from the provisions of sections 425.31, 425.32, 425.33, 425.51 and 425.52 of the basic or State Building Code, if such park meets the remaining requirements for a license; and provided further, the commissioner may exempt any mobile manufactured home park from the provisions of section 425.37 of said code, with respect to faucets, sanitary facilities, laundry tubs and slop sinks for community use. *The replacement of a mobile manufactured home in a mobile manufactured home park with a mobile manufactured home with the same or different external dimensions that is built in compliance with federal mobile manufactured home construction and safety standards, as amended from time to time,*

of the entire statute, including the language added by P.A. 07-43, evidences no intent to clarify existing law, nor do the defendants explain how the plain meaning of the statute indicates a legislative intent to apply the legislation retrospectively. Further, the legislative history of P.A. 07-43 is not supportive of the defendants' argument. The statement quoted by the defendants in their brief was made by an attorney who represents low income clients in the Connecticut legal aid programs, not by a senator or the sponsor of the bill.

If, as stated, the bill was passed in response to the plaintiff's appeals, it clearly should not be applied to his pending cases. General Statutes § 1-1 (u) provides that "[t]he passage or repeal of an act shall not affect any action then pending." Public Act 07-43 was passed on May 21, 2007. The plaintiff's appeals were pending in this court at that time. Moreover, our case law prohibits the retroactive application of new legislation, even if it clarifies existing law, which this public act does not, when vested rights are affected. "[T]he retroactive nature of legislation has limits. For instance, clarifying legislation must not operate in a manner that would unjustly abrogate vested rights. . . . A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Citation omitted; internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, supra, 263 Conn. 375.

Accordingly, the defendants' motion to dismiss the plaintiff's appeals as moot because of the enactment of P.A. 07-43 is denied.[10]

---

*shall not constitute an expansion of a nonconforming use.*" (Emphasis added.)

[10] Even if the defendants can reapply for zoning permits and certificates of zoning compliance for the mobile homes at issue, and be afforded the protection of P.A. 07-43, the appeals still are not moot. As noted in the plaintiff's opposition to the defendants' motion to dismiss, the plaintiff has a pending state and federal action seeking damages allegedly caused by,

Another issue implicating the mootness doctrine, although not raised by the plaintiff or the defendants, concerns the sale of four of the subject mobile homes after certificates of zoning compliance were issued for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane. The record indicates that those four mobile homes were sold prior to the issuance of the trial court's decision. The defendants have indicated, however, that the mobile home units are sold to contract purchasers and that the defendants retain ownership of the land, which is leased by those contract purchasers. The defendants retain a continuing interest in the mobile home park property, and, therefore, the appeals have not been rendered moot by the sale of those mobile homes.[11]

I

AC 27788

AC 27789

A

The plaintiff's first claim on appeal is that the doctrine of res judicata precluded the trial court from determining whether his appeals to the board had been timely

inter alia, the issuance of those permits and certificates. Moreover, the replacements may implicate compliance issues with other zoning regulations affecting the mobile homes and the mobile home park.

[11] It should be noted that the owners of the mobile homes located at 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane were not joined as parties to the actions in the trial court. The defendants have not raised or briefed the issue as to whether the contract purchasers of those four mobile homes were necessary or indispensable parties to the plaintiff's actions. See *Demarest* v. *Fire Dept.*, 76 Conn. App. 24, 817 A.2d 1285 (2003); *J & B Construction & Contracting Services, Inc.* v. *Zoning Board of Appeals*, 45 Conn. App. 702, 697 A.2d 721 (1997). Although this court notified the parties that they should be prepared to address any questions that the court might have with respect to this issue at oral argument, we are not able to address that issue because the record is not clear as to which of the mobile homes involved in these appeals are now owned by individual contract purchasers. At the time of oral argument, counsel for the defendants indicated that some of the mobile homes in the mobile home park are owned by the defendants and some are owned by individuals.

filed. Specifically, he argues that the issue of timeliness as to his appeals from the issuance of zoning permits for the replacement of mobile homes at 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane was decided by the board in favor of the plaintiff in its decision made on July 21, 2004. The plaintiff claims that the board's determination that his appeals were timely was not appealed by the defendants and, therefore, constitutes a final decision for res judicata purposes. We conclude that the board's determination collaterally estopped relitigation of that issue and reverse the trial court's judgment dismissing the plaintiff's appeals on that ground.[12]

We first address the defendants' claim that this issue was not properly preserved for appellate review because the plaintiff did not argue before the trial court that the res judicata doctrine precluded the consideration of the timeliness of his appeals to the board. The defendants state that no such argument is contained in the plaintiff's initial brief or reply brief filed with the court before its decision of February 10, 2006. As we previously noted, however, the plaintiff and the defendants filed motions for reargument and reconsideration after the court issued its memorandum of decision. In the plaintiff's motion, he sets forth his res judicata claim. The court allowed the parties to argue those motions on March 28, 2006, and a review of the transcript reveals that counsel for the plaintiff and the defendants addressed the issue of the preclusive effect of the res judicata doctrine. The defendants did not object to the issue being raised at that time. When the court issued its order on April 5, 2006, it explicitly stated that it "reconsidered all issues raised by the plaintiff and the defendant in light of the reargument." We conclude,

---

[12] Although the plaintiff argues that the doctrine of res judicata precludes relitigation of the timeliness issue, we conclude that the doctrine of collateral estoppel, an aspect of res judicata, is applicable to the present case.

therefore, that the issue is reviewable because the parties addressed the res judicata claim, and the trial court considered the res judicata claim before rendering final judgment on April 5, 2006.

The fundamental principles underlying the doctrines of res judicata and collateral estoppel are well established. "[T]he issue of whether principles of res judicata and collateral estoppel are applicable to a particular set of facts is a question of law over which an appellate court's review is plenary." *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 744–45, 826 A.2d 170 (2003). "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citations omitted; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772, 770 A.2d 1 (2001).

"As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate. . . . [A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." (Citations omitted; internal quotation marks omitted.) Id., 773. That principle likewise applies to

collateral estoppel, an aspect of res judicata. See *Caro-thers* v. *Capozziello,* 215 Conn. 82, 94–95, 574 A.2d 1268 (1990).

Applying these principles to the facts of this case, we conclude that the record supports the plaintiff's claim that the issue of the timeliness of his appeals to the board, taken from the zoning enforcement officer's issuance of the zoning permits for nine of the eleven replacements made at the defendants' mobile home park, was raised at the public hearing held before the board on May 19 and June 16, 2004. Counsel for the plaintiff and counsel for the defendants both spoke to the fact that the plaintiff's appeals had not been filed until after he received notice that the permits had been issued. They disagreed as to the date that his construc-tive notice began and, therefore, disagreed as to whether he had filed them within thirty days of that notice. The plaintiff was present on both dates, and the president of the defendant Garden Homes Management Corporation was present at the hearing on June 16, 2004. The opportunity was available, and taken advantage of, to discuss their antagonistic positions.

The transcript of the public hearing reveals that the issue of timeliness was actually litigated, and the deci-sion of the board reflects that it was actually decided. The board's decision of July 21, 2004, upheld the plain-tiff's appeal with respect to the zoning permits issued for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane, by overturning the decision of the zoning enforcement officer to issue those permits.[13] In order to reach that decision, the board had to have concluded that the plaintiff's appeals had been filed within the requisite thirty day period from his construc-tive notice of the issuance of those permits or else the

[13] The board also overturned the zoning enforcement officer's decision to issue a zoning permit for 15 Duncan Lane, but that replacement is not at issue in these appeals.

board would have dismissed his appeals. This is borne out by the fact that the board, on the same day, upheld the zoning enforcement officer's decision to issue zoning permits for four other replacements at the defendants' mobile home park because "the time frame for an appeal has expired." The board's decision as to the timeliness of the plaintiff's appeals was essential to its final decision.

The board's decision as to the timeliness issue was adverse to the defendants. Nevertheless, the defendants did not appeal from that decision to the Superior Court. For purposes of collateral estoppel, the board's decision was a final determination of that issue between these parties. Because the criteria necessary for the application of the collateral estoppel doctrine have been met, the defendants were barred from relitigating that issue before the trial court.[14]

The trial court, on the basis of its conclusion that the appeals from the issuance of the permits were not timely, concluded that the plaintiff's appeals from the issuance of the certificates of zoning compliance had

---

[14] Although a board is without jurisdiction to hear an appeal that was not timely filed; see *Munroe* v. *Zoning Board of Appeals*, 261 Conn. 263, 274, 802 A.2d 55 (2002); and our review of jurisdictional issues is de novo; see *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 257, 932 A.2d 1053 (2007); it nevertheless is appropriate to apply the collateral estoppel doctrine under the circumstances of this case.

"This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . In certain circumstances, we have, however, recognized that this principle of validity must be tempered by the countervailing force of the principle of finality. The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." (Citations omitted; internal quotation marks omitted.) *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990).

no merit. The court found: "The permits were valid because the appeals were not timely. To allow an appeal of a ministerial certificate of compliance on the ground that the zoning permit should never have issued would circumvent the intent and purpose of the statutory time limit for appeal. It is really the zoning permits, not the certificates of compliance, which the plaintiff wishes to appeal. Having found that the permits cannot be attacked, the court cannot find a factual predicate for the claim that the certificates of zoning compliance were improper." The court improperly considered the timeliness of the filing of the appeals from the permits and, therefore, improperly concluded that the plaintiff could not appeal from the issuance of the certificates of zoning compliance.

B

The plaintiff's second claim challenges the court's conclusion that he could not appeal from the issuance of the certificates of zoning compliance. He argues that the permits were invalid and, a fortiori, the certificates of zoning compliance for the same replacement mobile homes also must be invalid. Additionally, he argues that an aggrieved person may appeal from the issuance of a certificate of zoning compliance as a separate appealable decision of the zoning enforcement officer. The defendants concede that the plaintiff did file his appeals from the issuance of the certificates of zoning compliance within the requisite thirty day period set forth in § 8-7. We conclude that the issuance of the certificates of zoning compliance by the zoning enforcement officer for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane constituted appealable decisions pursuant to General Statutes § 8-6.

Section 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged

that there is an error in any order, requirement or *decision* made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." (Emphasis added.) The statutory language is broad. The New Milford zoning enforcement officer made the *decision* to issue the certificates of zoning compliance for those four replacements at the defendants' mobile home park. An appeal from such a decision by an aggrieved person is expressly permitted by the statute.

The only authority cited by the defendants in support of their argument against the appealability of such decisions is *Stop & Shop Supermarket Co.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Tolland, Docket No. CV-04-0084630-S (February 3, 2005). In that Superior Court decision, the court concluded that the issuance of a zoning compliance certificate was not a *proceeding* under General Statutes § 22a-19 and, therefore, that the plaintiffs had no standing to appeal from the decision of the zoning board of appeals denying them intervenor status. The reasoning employed by the court in reaching its conclusion in that decision is inapposite to the present case.

Furthermore, the certificate itself contains language refuting the defendants' argument that the issuance of such a certificate is merely a ministerial decision that cannot be appealed under § 8-6. On the face of the certificate of zoning compliance, after the statement that "all structures and other improvements to the property are in compliance with the applicable zoning regulations," is the following information: "In accordance with subsection (f) of § 8-3 of the Connecticut General Statutes (effective October 1, 2003), you are hereby informed that you may provide notice of issuance of this certification by publication in a newspaper having substantial circulation in the municipality stating that

this certification has been issued. This notice shall contain a description of the building, use or structure, the location of the building, use or structure, the identity of the applicant, *and a statement that an aggrieved person may appeal to the zoning board of appeals in accordance with the provision of § 8-7, as amended by [Public Acts 2003, No.] 03-144.*" (Emphasis added.)

Accordingly, with respect to AC 27788 and AC 27789, we conclude that the collateral estoppel doctrine precluded the relitigation of the issue pertaining to the timeliness of the plaintiff's appeals to the board with respect to the issuance of the zoning permits for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane. We further conclude that the trial court improperly determined that the certificates of zoning compliance for those four replacements could not be appealed because the plaintiff had not timely appealed from the issuance of the permits. Finally, we conclude that the issuance of the certificates of zoning compliance by the zoning enforcement officer in this case was a separate appealable decision pursuant to § 8-6.

II

AC 27787

A

The defendants' first claim in their appeal is that the trial court improperly concluded that the plaintiff's appeal to the board from the issuance of the zoning permits for 10 Tallow Lane and 11 Shadow Lane was timely filed. Those two permits had been misfiled by the zoning department. The plaintiff appealed from the decision to issue them upon his discovery of their existence. The defendants claim that the plaintiff had constructive notice of the permits for 10 Tallow Lane and 11 Shadow Lane in February, 2004, when he noticed

construction activity from his window, and that his appeal was filed more than thirty days after that notice.

We first note that the doctrine of collateral estoppel does not preclude consideration of this issue. The board's decision of July 21, 2004, in which it upheld the plaintiff's appeals with respect to the issuance of zoning permits for four replacement mobile homes, did not address the zoning permits issued for 10 Tallow Lane and 11 Shadow Lane. Because a timeliness claim with respect to 10 Tallow Lane and 11 Shadow Lane was not fully litigated and decided by the board, it was properly before the trial court.[15]

It is undisputed that the zoning permits for the replacement of the mobile homes at 10 Tallow Lane and 11 Shadow Lane had been misfiled at the zoning department. Because they were misfiled, the plaintiff would not have discovered the issuance of those permits if he had gone to the zoning office to inquire about replacement permits at the defendants' mobile home park. When he filed his freedom of information request in April, 2004, he did not receive copies of those permits in response. Upon discovering the existence of the zoning permits for 10 Tallow Lane and 11 Shadow Lane in late May, 2004, the plaintiff filed his appeal as to those permits within the requisite thirty day period. On the basis of those facts as found by the court, it concluded that the plaintiff timely appealed to the board within

[15] At the public hearing held on the plaintiff's appeal to the board from the issuance of the replacement mobile homes at 10 Tallow Lane and 11 Shadow Lane, the parties did not litigate fully the issue of the timeliness of the plaintiff's appeal, nor did the board address the issue when it upheld the decision of the zoning enforcement officer in issuing those permits. By the time the board issued its decision on November 17, 2004, the plaintiff already had filed an appeal in the Superior Court, challenging the board's prior decision with respect to the defendants' mobile home park. When the board made its decision on November 17, 2004, the members spoke about their perceived need to be consistent with the board's previous decision so as not to jeopardize the pending Superior Court appeal.

thirty days of the date that he received actual notice that the two permits had been issued.

Whether the plaintiff's observation of construction activity at 16 Tallow Lane and 18 Tallow Lane constituted constructive notice that zoning permits had been issued for 10 Tallow Lane and 11 Shadow Lane, so as to trigger the thirty day appeal period set forth in § 8-7, is a mixed question of fact and law. In the present case, there is no dispute as to the facts found by the court on this issue. Rather, the dispute arises from the court's application of § 8-7 to those facts. Accordingly, our review of this issue of law is plenary. See *Roncari Industries, Inc.* v. *Planning & Zoning Commission*, 281 Conn. 66, 72, 912 A.2d 1008 (2007).

"[W]ithout notice that a decision has been reached, the right to appeal from that decision is meaningless." (Internal quotation marks omitted.) *Munroe* v. *Zoning Board of Appeals*, 261 Conn. 263, 271, 802 A.2d 55 (2002). Section 8-7 provides that the appeal period commences "upon actual or constructive notice of such order, requirement or decision."

Although the record does not disclose the exact number of mobile manufactured homes located in Candle Hill Mobile Home Park in February, 2004, it was established that the park contained more than 100 units at the time it became a nonconforming use. The park consists of three parcels of land, and each mobile home occupies a designated space within the park. The record indicates, as acknowledged by counsel for the defendants at oral argument, that the roads within the mobile home park are private roads. Historically, the replacement of each older mobile home with a newer model has required the issuance of a zoning permit and a certificate of zoning compliance. They have been treated by the zoning enforcement officer as separate units with separate compliance issues.

If the defendants' position is correct, the plaintiff, who saw construction activity at 10 Tallow Lane and 11 Shadow Lane from the window of his residence, had constructive notice of the issuance of zoning permits for replacements at any location within the defendants' mobile home park even though he would not be able to see the installation of the new units from his home or verify that such activity was occurring without traveling over the private roads on the defendants' property. Moreover, even if the plaintiff had inquired within thirty days of the date he first noticed activity at two of the locations, it is undisputed that he could not have discovered the permits issued for 10 Tallow Lane and 11 Shadow Lane because they were misfiled and were not discovered until late May, 2004.

On the basis of the facts as found by the court, we conclude that it properly determined that the plaintiff's appeal to the board from the issuance of the zoning permits for 10 Tallow Lane and 11 Shadow Lane was timely because he appealed within thirty days of his actual notice of the existence of those permits as required by § 8-7.[16]

### B

The defendants next claim that the court improperly concluded that the replacement of individual mobile homes with larger mobile homes in the defendants' mobile home park constituted an illegal expansion and enlargement of a nonconformity. Specifically, the defendants argue that the park itself, and not an individual

---

[16] The defendants rely heavily on *Munroe* v. *Zoning Board of Appeals*, supra, 261 Conn. 263, for the proposition that a plaintiff first receives notice of the issuance of a certificate of zoning compliance at the time that he observes work on the nonconforming structure. The thirty day appeal period began on the date that the plaintiff observed the work because he had constructive notice of the decision of the zoning enforcement officer. In *Munroe*, however, the date at which the appeal period commenced was not challenged by the plaintiffs. Id., 273–74. That decision, therefore, is inapposite and unpersuasive in the present case.

mobile home, is the nonconformity and that the replacement of any single mobile home cannot be an expansion unless that replacement alters the unit count, increases the acreage used for the park, exceeds the maximum building height in the zone or violates setback requirements. We disagree.

"Although existing nonconforming uses are protected by statute; General Statutes § 8-2;[17] public policy favors their abolition as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." (Internal quotation marks omitted.) *Crabtree Realty Co.* v. *Planning & Zoning Commission*, 82 Conn. App. 559, 562, 845 A.2d 447, cert. denied, 269 Conn. 911, 852 A.2d 739 (2004). "A [nonconforming] use is merely an existing use the continuance of which is authorized by the zoning regulations. . . . Stated another way, it is a use . . . prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations [were] adopted. . . . [T]he rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the [relevant] zoning regulations." (Citations omitted; internal quotation marks omitted.) *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 256, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003).

In order to determine whether the court properly concluded that the replacement of older mobile homes in the defendants' mobile home park with newer models with increased square footage constituted an illegal

---

[17] General Statutes § 8-2 (a) provides in relevant part: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. . . ."

expansion of a nonconforming use, we are required to interpret the New Milford zoning regulations pertaining to nonconforming uses. "Because the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . . The process of statutory interpretation involves the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, 97 Conn. App. 17, 21–22, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006).

After a thorough review of the town's zoning regulations, we conclude that the court properly determined that the mobile home park is a nonconforming use and that the individual mobile homes are nonconforming structures under the town's zoning regulations. The court also properly determined that replacing existing mobile homes with larger mobile homes illegally increased the nonconformity and that issuing the zoning permits allowing those replacements was improper.

Chapter 160 of the New Milford regulations is entitled "nonconforming uses and structures." Section 160-010 of that chapter provides in relevant part: "The lawfully permitted use of land or structures existing at the time of the adoption of [these regulations] may be continued, although such use does not conform to the standards of the district in which such land or structure is located.

Said uses shall be deemed nonconforming uses." Section 160-030, entitled "nonconforming use of structures," is particularly relevant to the facts of the present case. Subsection (1) provides: "A structure, the use of which does not conform to the use regulations for the district in which it is situated, shall not be enlarged or extended unless the use therein is changed to a conforming use." Subsection (2) provides: "Such nonconforming structure shall not be structurally altered or reconstructed unless such alterations are required by law; provided, however, that such maintenance and repair work as is required to keep a nonconforming structure in sound condition shall be permitted."

A nonconforming use is defined in the regulations as a "use of land or a structure, which does not conform to the regulations of the use district in which it is located and which was a lawful use at the time these regulations or any amendments thereto became effective." A structure is defined in the regulations as "[a]nything constructed or erected, including a building, the use of which requires location on or under the ground or attachment to something having location on the ground." New Milford Zoning Regs., c. 15, § 015-010. A mobile manufactured home clearly is a structure as that term is defined in the regulations.

The town's zoning regulations also contain a separate section addressed to mobile homes and mobile home parks in chapter 170 entitled "special provisions." Section 170-030 provides in relevant part: "The use of mobile homes for human occupancy is permitted only in the following zones: R-20 Residential Zone, B-1 Restricted Business Zone, B-2 General Business Zone, Industrial Zone and Multiple Residence Zone. . . . A mobile home park may be permitted in the following zones: R-20 Residential Zone, B-1 Restricted Business Zone, B-2 General Business Zone, Industrial Zone and Multiple Residence Zone subject to the requirements

hereinafter set forth and to site plan approval by the Zoning Commission as stated in Chapter 175." Mobile home is defined in that section as "a unit that is equipped with running water, bath facilities, flush toilet and appropriate sanitary connections." Mobile home park is defined as "privately owned land upon which two (2) or more mobile homes are, or are intended to be, parked and occupied as dwellings."

"The [zoning] regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). In construing the sections of the regulations that are relevant to this case, we conclude that mobile homes and mobile home parks are permitted only in certain designated zones throughout the town. They are not permitted uses in an R-60 or an R-80 zone.[18] Because Candle Hill Mobile Home Park was validly existing at the time of the adoption of zoning in the town of New Milford, the mobile homes and the park became nonconforming uses. As such, their uses were permitted to continue but not to increase. A nonconforming structure cannot be enlarged.[19] The defendants were replacing the existing older mobile homes with larger mobile homes, units with additional square footage. The regulations expressly prohibit such an expansion of the nonconformity.[20]

---

[18] "Uses of land, buildings or structures not clearly permitted in the various zoning districts are prohibited." New Milford Zoning Regs., c. 10, § 010-60 (8).

[19] "[A] nonconforming structure cannot be increased in size in violation of zoning ordinances . . . ." *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 243, 662 A.2d 1179 (1995).

[20] The numerous cases cited by the defendants in support of their argument are relevant only if the park itself is the only nonconformity. For that reason, the defendants have claimed that the mobile homes themselves were not nonconforming uses. The regulations, however, clearly belie that position.

The defendants further claim that, even if the mobile homes themselves are nonconforming structures, § 160-030, subsection (2), in chapter 160 of the New Milford zoning regulations permits the alteration or reconstruction of a nonconforming structure if "required by law . . . ." They argue that the upgrades of the mobile home units have been done to comply with the national building code for mobile manufactured homes, that the newer units are required to be wider and longer to be in compliance with that law.[21] As they conceded at oral argument, however, the defendants are not "required by law" to replace any of the older mobile homes in their park. Their decision to replace the older mobile homes with newer mobile homes is a voluntary one. The exception in the regulations, therefore, does not apply to this situation.

The defendants' final argument is that disallowing these mobile home replacements runs contrary to state and federal public policy. "The legislature speaks on matters of public policy through legislative enactments and through the promulgation of regulations by state agencies as authorized by statute." (Internal quotation marks omitted.) *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 846, 912 A.2d 1037 (2006). Indeed, the legislature, by enacting P.A. 07-43, has indicated that future replacements of mobile homes with larger mobile homes conforming to federal standards will not constitute an expansion of a nonconforming use. There is no legislation, however, that protects the permits and certificates under consideration in the present case, which were issued prior to the statute's effective date. It is not our province to override the clear intent manifested in the New Milford zoning regulations and our state statutes to facilitate the continued operation of

---

[21] The defendants do not claim that the federal laws with respect to construction and safety standards for mobile manufactured homes preempts the local zoning regulations.

mobile manufactured home parks, as requested by the defendants in this claim.

On the plaintiff's appeals, the judgment is reversed in part and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeals and voiding the zoning permits and the certificates of zoning compliance issued for 4 Wicker Lane, 16 Tallow Lane, 18 Tallow Lane and 17 Victory Lane.

On the defendants' appeal, the judgment is affirmed.

In this opinion the other judges concurred.