354 Conn. 151          FEBRUARY, 2026          151

Del Rio *v.* Amazon.com Services, Inc.

## JAVIER DEL RIO ET AL. *v.* AMAZON.COM SERVICES, INC., ET AL.
### (SC 21109)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiffs, current or former employees of the defendants, filed a class action in the Superior Court seeking to recover for the defendants' alleged violation of Connecticut's wage laws. The plaintiffs claimed, inter alia, that the defendants had failed to compensate them and other similarly situated employees for time spent undergoing mandatory security screenings before leaving the defendants' premises at the end of their shifts. After the case was removed to federal court, the United States District Court for the District of Connecticut granted the defendants' motion for summary judgment and rendered judgment in their favor, concluding that, because Connecticut's wage laws were intended to be coextensive with the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.), as amended by the Portal-to-Portal Act of 1947 (29 U.S.C. § 251 et seq.), and because the time employees spend undergoing mandatory security screenings has been deemed to be noncompensable under federal law, the plaintiffs were not entitled to compensation under Connecticut law for the time spent undergoing the defendants' security screenings. The plaintiffs appealed from the District Court's judgment to the United States Court of Appeals for the Second Circuit, which, pursuant to statute (§ 51-199b (d)), certified to this court two questions of law concerning the scope of Connecticut law. *Held*:

Connecticut's wage laws are more protective than federal wage laws insofar as Connecticut law requires an employer to compensate its employees for time spent undergoing mandatory security screenings on the employer's premises.

Under Connecticut law, an employer must compensate its employers for all "hours worked," and the plain and unambiguous language of the statute (§ 31-76b (2) (A)) defining that phrase requires an employer to compensate its employees for any period of time during which the employer requires its employee to be on its premises, even if the employee is not required to work during that time period.

Because it was undisputed that the defendants required the plaintiffs to undergo mandatory security screenings on the defendants' premises before the plaintiffs were permitted to leave those premises at the end of their shifts, that time was compensable under the plain language of § 31-76b (2) (A).

Moreover, there was no merit to the defendants' claim that interpreting § 31-76b (2) (A) to require employers to compensate their employees for time spent undergoing mandatory security screenings would lead to absurd or unworkable results, as the defendants failed to demonstrate that the legislature's policy choice was bizarre, absurd or contrary to common sense, and this court could not conclude that it would be impractical or infeasible for employers to keep track of that time.

Del Rio *v.* Amazon.com Services, Inc.

This court clarified that, in contrast to federal law, Connecticut's wage laws do not incorporate, either by statute, regulation or judicial precedent, a de minimis exception to compensability that would allow an employer, in recording an employee's time at work, to disregard insubstantial or insignificant periods of time beyond an employee's scheduled working hours when those periods of time cannot, as a practical administrative matter, be precisely recorded for payroll purposes.

Argued November 3, 2025—officially released February 10, 2026

*Procedural History*

Action to recover damages for the defendants' alleged violations of Connecticut's wage laws, and for other relief, brought to the Superior Court in the judicial district of Hartford; thereafter, the case was removed to the United States District Court for the District of Connecticut, where the court, *Dooley, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the United States Court of Appeals for the Second Circuit, which certified certain questions of law to this court concerning whether Connecticut law requires that employees be compensated for the time spent undergoing mandatory security screenings on their employer's premises.

*Richard E. Hayber*, with whom was *Thomas J. Durkin*, for the appellants (plaintiffs).

*Proloy K. Das,* with whom were *Michael C. Harrington* and, on the brief, *Johanna G. Zelman* and *Michael J. Spagnola*, for the appellee (named defendant).

*Mary C. Dollarhide* filed a brief for the National Retail Federation et al. as amici curiae.

*Opinion*

ECKER, J. This putative class action, which comes to us on certification from the United States Court of Appeals for the Second Circuit, presents two related legal issues concerning whether Connecticut's wage laws require employers to pay their employees for time spent undergoing mandatory security screenings on the

Del Rio *v.* Amazon.com Services, Inc.

employers' premises at the end of the employees' shifts. The plaintiffs, Javier Del Rio, Colin Meunier, and Aaron Delaroche, were employed by the defendants, Amazon.com.dedc, LLC, Amazon.com, Inc., and Amazon.com Services, Inc.,[1] as warehouse workers at certain of Amazon's fulfillment centers in Connecticut between 2018 and 2021. The plaintiffs filed a class action complaint in the Superior Court, on behalf of themselves and similarly situated employees, claiming that Amazon was required to pay its employees for the time it took them to pass through security screening before exiting the fulfillment centers pursuant to General Statutes § 31-76b (2) (A), which provides in relevant part that an employee's compensable "hours worked" include "all time during which an employee is required by the employer to be on the employer's premises . . . ."

After removing the case to federal court, Amazon moved for summary judgment on the basis of *Integrity Staffing Solutions, Inc.* v. *Busk*, 574 U.S. 27, 135 S. Ct. 513, 190 L. Ed. 2d 410 (2014), which held that "time spent waiting to undergo and undergoing . . . security screenings is [not] compensable under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., as amended by the Portal-to-Portal Act of 1947 [PTPA], [29 U.S.C.] § 251 et seq." Id., 29; see *Del Rio* v. *Amazon.com Services, Inc.*, 693 F. Supp. 3d 301, 302 (D. Conn. 2023). The District Court granted Amazon's motion for summary judgment and rendered judgment for Amazon on the ground that "the time [the plaintiffs] spent in security lines is not compensable under Connecticut wage laws . . . ." *Del Rio* v. *Amazon.com Services, Inc.*, supra, 305. The plaintiffs appealed, and the Second Circuit determined that the appeal presented unresolved issues of state law that should be decided by this court in the first instance. See *Del Rio* v. *Amazon.com.dedc, LLC*, 132 F.4th 172, 174 (2d Cir. 2025). We accepted the

[1] In 2019, Amazon.com.dedc, LLC, merged into Amazon.com Services, Inc., which is now known as Amazon.com Services, LLC. Amazon.com, Inc., is an affiliated, indirect parent corporation. We refer to the defendants collectively as Amazon.

154      FEBRUARY, 2026      354 Conn. 151

Del Rio *v.* Amazon.com Services, Inc.

Second Circuit's request to address the following two certified questions of law, as modified: **(1)** Under Connecticut's wage laws and regulations, must employees be compensated for the time spent going through mandatory security screenings at their place of employment? And **(2)** does a de minimis exception apply, and, if so, what factors should be considered in determining whether the uncompensated time is de minimis? See id., 181; see also General Statutes § 51-199b (d) and (k); Practice Book § 82-1. We answer the first certified question in the affirmative and the second in the negative.

## I

### FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed for purposes of this matter. Amazon owns and operates various facilities throughout Connecticut, including two fulfillment centers: BDL2 in Windsor, and BDL3 in North Haven. The plaintiffs worked for Amazon as fulfillment associates at BDL2 or BDL3 between 2018 and 2021.[2] Amazon employed the security screening procedures that are the subject of this case at BDL2 and BDL3 from April, 2018, through March 15, 2020.[3] In accordance with these procedures, the plaintiffs and other Amazon employees were required to swipe their security badges at a single entrance to enter each fulfillment center. Employees were not required to undergo security screening upon entry. They could bypass the screening area to access a locker room, where they had the option to store their personal belongings in an assigned locker. After walking past the security area and the locker room, employees would clock in by swiping their badges at one of multiple time clocks located throughout the building.

Amazon required its employees to pass through a metal detector in the security area before exiting the building.

---

[2] Del Rio worked at BDL3 from November, 2020, through April, 2021, Meunier worked at BDL2 from May, 2018, through July, 2019, and Delaroche worked at BDL2 from November, 2019, through April, 2021.

[3] Amazon discontinued the security screening procedure in March, 2020, because of the COVID-19 pandemic.

354 Conn. 151        FEBRUARY, 2026        155

Del Rio *v.* Amazon.com Services, Inc.

Depending on what employees carried with them into the secured area, employees were required to pass through one of three available security screening processes: express lanes, divesting tables, or X-ray machines. The express lanes were for employees with no belongings on their persons. Employees exiting through the express lanes were not required to spend any additional time on the premises; they could walk through a metal detector "without breaking stride." The divesting tables were for employees with personal items in their pockets, such as keys, coins, wallets, or cigarettes. Employees using the divesting tables were required to put those items in a basket and to walk through a metal detector. The X-ray machines were for employees with larger personal items, such as bags, lunch boxes, and purses. Employees were required to put these larger personal items through an X-ray machine while the employee walked through a metal detector. If an alarm was activated during any of the security screening processes, the employee then proceeded to a secondary screening area, where the employee was screened with a hand-held metal detector by a security guard.

Although the express lanes did not require any additional time, there was evidence that the divesting tables, X-ray machines, and secondary screening processes took anywhere from ten seconds to twenty minutes. Video footage of Amazon employees exiting BDL2 indicated that even the slowest screening process, the X-ray machines, "took an average of ten . . . seconds." Delaroche testified at his deposition that the mandatory screening processes generally were " 'quick,' " taking "three minutes or less . . . ." He asserted that "the longest amount of time it ever took for him to get through security was an estimated twenty minutes but did not provide any details other than to acknowledge that this was neither regular nor a typical amount of time." Meunier testified at his deposition that "the longest time he ever spent going through security screening, including secondary screening, was ten minutes." Excluding secondary

Del Rio *v.* Amazon.com Services, Inc.

screening, the maximum amount of time Meunier ever spent in security screening "was three to four minutes."

In August, 2021, the plaintiffs filed a class action complaint in the Superior Court on behalf of themselves and "[a]ll current and former employees of [Amazon] who were employed as hourly, nonexempt warehouse workers at any time from April 16, 2018, through the date of final judgment in this matter." The complaint alleged that Amazon had failed to pay the plaintiffs and other similarly situated employees for time spent undergoing mandatory security screenings on the premises of the fulfillment centers in violation of § 31-76b (2) (A), which defines "hours worked" as including "all time that [employees] are 'required by the employer to be on the employer's premises . . . .'" The plaintiffs sought straight time and overtime "at twice the full amount" of such wages, as well as costs and attorney's fees, under General Statutes §§ 31-68 and 31-72.

Amazon removed the case to the United States District Court for the District of Connecticut pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d) (2) (2018). In December, 2022, Amazon moved for summary judgment, claiming that time spent undergoing mandatory security screenings was not compensable as a matter of law because (1) Connecticut's wage laws were intended to mirror the FLSA, as amended by the PTPA, which has been construed to exclude mandatory security screenings from compensability on the ground that such screenings are "postliminary activities" that are "not 'integral and indispensable' to the employees' duties as warehouse workers"; *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 35; and (2) even if time spent undergoing mandatory security screenings otherwise is generally compensable, the record evidence demonstrates that it was noncompensable in this case because it was de minimis.

To resolve Amazon's motion, the District Court looked to the definition of "hours worked" in § 31-76b (2) (A), which provides that "'[h]ours worked' include all time

during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer." See *Del Rio* v. *Amazon.com Services, Inc.*, supra, 693 F. Supp. 3d 306. The District Court concluded that the definition of "hours worked" was ambiguous because it was "silent about what constitutes 'work' . . . ." Id. The District Court relied on *Belgada* v. *Hy's Livery Service, Inc.*, 220 Conn. App. 102, 120, 297 A.3d 199 (2023), which considered "extratextual sources to discern the meaning of the word ['work,' as used in § 31-76b (2) (A)] and found that the legislative history makes clear 'that the purpose of the [overtime wage] act was to make Connecticut law coextensive with federal overtime law.' " *Del Rio* v. *Amazon.com Services, Inc.*, supra, 307. Additionally, the District Court noted that Connecticut appellate courts often "look to federal statutes and precedent when interpreting equivalent provisions, including how to interpret the word 'work' in § 31-76b (2) (A)." Id. Given that Connecticut's wage laws were intended to be coextensive with federal law, the District Court concluded that, pursuant to *Integrity Staffing Solutions, Inc.*, "the time [the plaintiffs] spent in security lines is not 'work' compensable under Connecticut's wage laws because it is not 'indispensable to the performance of their productive work and integrally related thereto' their duties 'of retrieving products from warehouse shelves or packing them for shipment.' " Id., 310, quoting *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 34–35. Accordingly, the District Court granted Amazon's motion for summary judgment. *Del Rio* v. *Amazon.com Services, Inc.*, supra, 310.

The plaintiffs appealed from the judgment of the District Court to the Second Circuit, which determined

Del Rio *v.* Amazon.com Services, Inc.

that "whether Connecticut's wage laws and regulations require employees to be compensated for the time spent going through mandatory security screenings at their place of employment" is "an unsettled question of Connecticut law, which . . . merits certification to the Connecticut Supreme Court." *Del Rio* v. *Amazon.com.dedc, LLC*, supra, 132 F.4th 176. The Second Circuit asked this court to address whether, under Connecticut's wage laws, time spent undergoing mandatory security screenings on an employer's premises is compensable and, if so, whether a de minimis exception applies. See id., 181. We accepted the Second Circuit's certified questions of law.

II

MINIMUM COMPENSABILITY STANDARDS ESTABLISHED BY FEDERAL LAW

The issues of Connecticut law requiring resolution can best be understood when viewed against the backdrop of federal wage and hour laws. The FLSA, as amended by the PTPA, establishes "a national floor with which state law must comply." *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 594, 89 A.3d 841 (2014); see also 29 U.S.C. § 218 (a) (2018). "[S]tate laws that provide less protection than guaranteed under the FLSA are in irreconcilable conflict with it and are preempted; state laws that provide the same or greater protection than that provided by the FLSA are consistent with the federal statutory scheme and are thus not preempted." *Sarrazin* v. *Coastal, Inc.*, supra, 594. In other words, states are free to enact wage statutes and regulations that are more generous to employees than the FLSA.

The FLSA was enacted in 1938 to establish "minimum wage and overtime compensation standards for hours worked in excess of forty hours in each workweek." *Chagoya* v. *Chicago*, 992 F.3d 607, 616 (7th Cir. 2021). "But the FLSA did not define 'work' or 'workweek,' and [the United States Supreme] Court interpreted those terms broadly." *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 31. In *Tennessee Coal, Iron & Railroad*

354 Conn. 151 FEBRUARY, 2026 159

Del Rio *v.* Amazon.com Services, Inc.

*Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944), the United States Supreme Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Eight months later, in *Armour & Co.* v. *Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 89 L. Ed. 118 (1944), the court clarified that the definition of "work" under the FLSA also includes an employee's "readiness to serve" because "[o]f course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." The United States Supreme Court provided an additional judicial gloss in *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), when it defined "workweek" as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace . . . ." Id., 690–91. "Applying these expansive definitions, the [United States Supreme] Court found compensable the time spent traveling between mine portals and underground work areas . . . and the time spent walking from timeclocks to workbenches . . . ." (Citations omitted.) *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 31; see also *Armour & Co* v. *Wantock*, supra, 132–34 (inactive time fire guards spent on duty on employer's premises was compensable work).

"These decisions provoked a flood of litigation"; *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 31; and "Congress responded swiftly" to amend the FLSA by enacting the PTPA in 1947. Id., 32. The PTPA expressly exempts from compensability "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

Del Rio *v.* Amazon.com Services, Inc.

29 U.S.C. § 254 (a) (2018). The term "principal activity or activities" includes all "integral and indispensable . . . activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." (Internal quotation marks omitted.) *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 33.

In *Integrity Staffing Solutions, Inc.*, the United States Supreme Court considered whether the FLSA, as amended by the PTPA, requires employers to compensate Amazon warehouse workers for time spent waiting to undergo and undergoing "an antitheft security screening before leaving the warehouse each day."[4] Id., 29. The court concluded that the security screenings were "noncompensable postliminary activities" because they were neither "the principal activity or activities . . . [that the] employee [was] employed to perform" nor "integral and indispensable to the employees' duties as warehouse workers." (Internal quotation marks omitted.) Id., 35. The court reasoned that the warehouse workers were not employed "to undergo security screenings, but to retrieve products from warehouse shelves and [to] package those products for shipment to Amazon customers." Id. Although the security screenings were required by the employer and, therefore, satisfied the broad definition of workweek adopted in *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 690–91, the court noted that it was "indisputable that the [PTPA] evinces Congress' intent to repudiate *Anderson*'s holding that such . . . time was compensable under the FLSA." (Internal quotation marks omitted.) *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 36.

It is also helpful to describe the federal de minimis doctrine, which is relevant to the second certified question. The de minimis doctrine does not appear in the text of either the FLSA or the PTPA. It finds its roots

---

[4]The warehouse workers were employed by Integrity Staffing Solutions, Inc., which "provides warehouse staffing to [Amazon] throughout the United States." *Integrity Staffing Solutions, Inc.* v. *Busk*, supra, 574 U.S. 29.

354 Conn. 151      FEBRUARY, 2026      161

Del Rio *v.* Amazon.com Services, Inc.

in *Anderson* v. *Mt. Clemens Pottery Co.*, supra, 328 U.S. 680, which held that otherwise compensable time may be deemed noncompensable under the FLSA if it is "negligible" or "de minimis . . . ." Id., 692. In *Anderson*, the court held that the broad definition of "workweek" in the FLSA "must be computed in light of the realities of the industrial world" and that, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." Id. The de minimis doctrine subsequently was codified in title 29 of the Code of Federal Regulations, § 785.47, which provides in relevant part: "In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. . . . This rule applies only where there are uncertain or indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. . . ."[5] (Citations omitted.)

---

[5] In *Sandifer* v. *United States Steel Corp.*, 571 U.S. 220, 134 S. Ct. 870, 187 L. Ed. 2d 729 (2014), the United States Supreme Court limited the applicability of the de minimis doctrine. The issue in *Sandifer* was the scope of 29 U.S.C. § 203 (o), which excludes from the definition of "[h]ours [w]orked . . . any time spent in changing clothes or washing at the beginning or end of each workday . . . ." (Internal quotation marks omitted.) Id., 226. The court held that time spent donning and doffing clothing was not compensable under 29 U.S.C. § 203 (o), but the time spent donning and doffing protective gear like glasses, earplugs, and respirators was compensable. See id., 232–33. Because 29 U.S.C. § 203 (o) was "*all about* trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs," the court "doubt[ed] that the de minimis doctrine [could] properly be applied," reasoning that there was "no more reason to *disregard* the minute or so necessary to put on glasses, earplugs, and respirators, than there is to *regard* the minute or so necessary to put on a snood. If the statute in question requires courts to select among trifles,

Del Rio *v.* Amazon.com Services, Inc.

29 C.F.R § 785.47 (2025). To determine whether time may be disregarded as de minimis, federal courts consider three factors: "**(1)** the practical administrative difficulty of recording additional time; **(2)** the size of the claim in the aggregate; and **(3)** whether the claimants performed the work on a regular basis." *Singh* v. *New York*, 524 F.3d 361, 371 (2d Cir. 2008).

Although federal regulations permit employers to disregard negligible periods of time if the requirements of the de minimis exception are met, they nonetheless require employers to keep an accurate record of "[h]ours worked each workday and total hours worked each workweek . . . ." 29 C.F.R. § 516.2 (a) (7) (2025). If an employer records time using a time clock, then employees who voluntarily clock in "before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded." Id., § 785.48 (a). "Minor differences between the clock records and actual hours worked cannot ordinarily be avoided"; id.; and federal law permits employers to round "the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour." Id., § 785.48 (b). The rounding rule, as it is commonly known, is premised on the principle that any minor discrepancy between the time worked and the time recorded "averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." Id.

## III

## DISCUSSION

The parties dispute whether Connecticut's wage laws provide employees with more protection than the FLSA,

---

*de minimis non curat lex* is not Latin for *close enough for government work*." (Emphasis in original.) Id., 234.

354 Conn. 151 FEBRUARY, 2026 163

Del Rio *v.* Amazon.com Services, Inc.

as amended by the PTPA, for time that employers require their employees to spend undergoing mandatory security screenings on the employers' premises. Amazon claims that the definition of "hours worked" in § 31-76b (2) (A) is ambiguous and, if construed expansively, would yield absurd or unworkable results. Relying on the legislative history of the statute, Amazon argues that the legislature intended the definition of "hours worked" to be limited by the restrictions codified in the PTPA. Alternatively, Amazon claims that, if Connecticut's wage laws are more protective than federal law, then the statutory and regulatory scheme should be construed to include a de minimis exception pursuant to which time spent undergoing mandatory security screenings is deemed noncompensable.

The plaintiffs claim that the plain and unambiguous language of § 31-76b (2) (A) requiring employers to compensate their employees for "all time during which an employee is required by the employer to be on the employer's premises" necessarily includes the time that employers require their employees to undergo mandatory security screenings on the employers' premises. According to the plaintiffs, the broad definition of compensability reflects the legislature's intent to provide protection to Connecticut workers consistent with the FLSA as it existed prior to its amendment by the PTPA. The plaintiffs also claim that a de minimis exception is contrary to the plain language of § 31-76b (2) (A), which requires employers to pay their employees for "all" compensable time. We agree with the plaintiffs that the unambiguous text of the statute resolves both of the certified questions.

Construction of Connecticut's wage laws and regulations presents an issue of law, over which our review is plenary. See, e.g., *Health Body World Supply, Inc.* v. *Wang*, 353 Conn. 296, 313, 342 A.3d 987 (2025). "In matters of statutory interpretation, we are guided by General Statutes § 1-2z, which directs us first to consider 'the text of the statute itself and its relationship to other statutes. If, after examining such text and considering

Del Rio *v.* Amazon.com Services, Inc.

such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.'" Id. A statute or regulation "is ambiguous if it is susceptible to more than one plausible interpretation." (Internal quotation marks omitted.) Id.; see also *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 603 ("[a]dministrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction, namely, under the well established principles of . . . § 1-2z" (internal quotation marks omitted)).

## A

### Whether "Hours Worked" Includes Time Employees Spend Undergoing Mandatory Security Screenings on Their Employers' Premises

We begin our analysis with the relevant statutory language. General Statutes § 31-71b (a) (1) requires employers to pay their employees "all wages, salary or other compensation due . . . ." The term "wages" means "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . . ." General Statutes § 31-71a (3); see also General Statutes § 31-58 (h) (" '[w]age' means compensation due to an employee by reason of his employment"). When wages are calculated on the basis of time, § 31-76b (2) (A) defines the amount of "[h]ours worked" as "all time during which an employee is *required by the employer to be on the employer's premises* or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. *Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer.*" (Emphasis added.)

Del Rio *v.* Amazon.com Services, Inc.

General Statutes § 31-76b (2) (A); accord Regs., Conn. State Agencies § 31-60-11 (a).

The plain language of § 31-76b (2) (A) requires that, with the exception of meal breaks, employers compensate their employees for four categories of time: (1) when the employer requires the employee to be on the employer's premises, (2) when the employee is on duty, (3) when the employer requires the employee to be at the prescribed work place, and (4) when the employee is employed or permitted to work, whether or not required to do so. With respect to all four categories, "hours worked" includes all time spent by the employee waiting on the premises, even if "no work is provided by the employer." General Statutes § 31-76b (2) (A).

It is undisputed for present purposes that Amazon required the plaintiffs to undergo mandatory security screenings on the premises of its fulfillment centers before permitting them to leave the buildings at the conclusion of their shifts.[6] Because Amazon required the

---

[6] Amazon contends that the additional time spent undergoing security screenings at the divestment tables and X-ray machines, as opposed to the express lanes, was not mandatory because it was the result of "individual [employees'] choice[s] to bring bags or other personal items, which were not required to perform their jobs, onto the secure warehouse floor . . . ." We decline to address this claim because it involves factual issues outside the scope of the relevant legal question certified for our review, which is limited to whether, under Connecticut's wage laws and regulations, employees must be compensated for the time spent going through *mandatory* security screenings at their place of employment. Whether some of the security screening processes at issue in this case were not mandatory—or, in the words of § 31-76b (2) (A), were not in fact "required by the employer"—involves factual issues outside the scope of the relevant certified question. See, e.g., *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 771, 67 A.3d 961 (2013) ("The scope of our review in a case involving a certified question from a federal court is ordinarily limited to the issue raised by that question. . . . [T]he purpose of the certification process is to answer the question of law submitted pursuant to the certification, not to resolve factual disputes between the parties." (Citation omitted; internal quotation marks omitted.)); *In re Amazon.com, Inc.*, 667 Pa. 16, 20 n.4, 255 A.3d 191 (2021) (declining to address whether "employees were not required to undergo security screenings because they had the option of using so-called 'express lanes' if they left behind personal items before they

Del Rio *v.* Amazon.com Services, Inc.

plaintiffs to remain on its premises during the mandatory security screenings, we conclude that this time was compensable under Connecticut's wage laws on the ground that it plainly and unambiguously constitutes "hours worked," as defined by § 31-76b (2) (A).

Amazon argues that the definition of "hours worked" is ambiguous because the term "work" is undefined. We disagree. Except for meal breaks, which are not at issue in this appeal,[7] the definition of "work" is irrelevant to the compensability of the time that employers require their employees to spend on the employers' premises under § 31-76b (2) (A). The operative term at issue in this case is the noun phrase "hours worked," and, pursuant to the plain language of the statute, that phrase means "all time during which an employee is required by the employer to be on the employer's premises," including "the time *when an employee is required to wait on the premises while no work is provided by the employer.*" (Emphasis added.) General Statutes § 31-76b (2) (A). To the extent that this definition may vary from the meaning that Amazon derives from other sources, "[t]he legislature is free to diverge from the dictionary definition when defining a term for its purposes." *State* v. *Panek*, 328 Conn. 219, 237, 177 A.3d 1113 (2018). The statutory text compels the conclusion that compensability does not depend on whether an employee's time is spent doing work if the employer requires the employee to remain on the employer's premises. Because it is undisputed that Amazon required the plaintiffs to remain on its premises

entered the facility" on ground that legal question "certified . . . by the Sixth Circuit Court of Appeals presume[d] that these screenings were required of all employees").

[7] In their complaint, the plaintiffs sought compensation for time spent undergoing mandatory security screenings during their unpaid meal breaks, in addition to time spent undergoing mandatory security screenings at the conclusion of their shifts. Before this court, however, the plaintiffs claim that the meal break exception does not apply and that we need not address "the interpretation of the meal break clause in . . . § 31-76b (2) (A) . . . ." Because the parties have not briefed, argued, or analyzed the applicability of the meal break exception to the undisputed facts in the record, we do not address this issue.

354 Conn. 151 FEBRUARY, 2026 167

Del Rio *v.* Amazon.com Services, Inc.

during the mandatory security screenings, their time was compensable under the plain language of §31-76b (2) (A).

Amazon relies, as did the District Court, on *Belgada* v. *Hy's Livery Service, Inc.*, supra, 220 Conn. App. 102, to support the claim that the statutory language is ambiguous. In *Belgada*, the Appellate Court considered whether meal breaks taken by limousine chauffeurs were compensable as "hours worked" under §31-76b (2) (A). See id., 104–105, 115–16. The chauffeurs claimed that their meal breaks were compensable because they were required to work by "'guard[ing]' their limousines and remain[ing] within two miles of their next pickup during their meal breaks . . . ." Id., 116. To resolve the chauffeurs' claim, the court was required to construe the meal break exception, which provides that meal breaks are not compensable "'unless the employee is required or permitted to work.'" Id., 115–16, quoting General Statutes §31-76b (2) (A). In analyzing whether the chauffeurs were "'required or permitted to work'" during their meal breaks, the court had to ascertain the meaning of the word "work," which was not defined in the statutory scheme. *Belgada* v. *Hy's Livery Service, Inc.*, supra, 116. The Appellate Court concluded that the term was ambiguous and looked for interpretative guidance to the legislative history of the statute and federal law. See id., 120–25.

Amazon's reliance on *Belgada* is misplaced because, in that case, the Appellate Court construed a portion of §31-76b (2) (A) that is inapplicable to the present case. "A statute may be clear and unambiguous as applied in one context but not in another." *State* v. *Crespo*, 317 Conn. 1, 10 n.10, 115 A.3d 447 (2015). Unlike the chauffeurs in *Belgada*, the plaintiffs do not claim that they were required or permitted to work during their meal breaks; nor do they ask us to construe the meal break exception in §31-76b (2) (A). See footnote 7 of this opinion. Instead, the plaintiffs claim that they were not paid for time that Amazon required them to remain on the premises of the fulfillment centers while undergoing mandatory

Del Rio *v.* Amazon.com Services, Inc.

security screenings at the conclusion of their shifts. The fact that the terms "hours worked" and "work" share a common etymological root does not require them to have a common meaning, at least not when the statute at issue expressly defines the phrase "hours worked" to include the time that an employee is required to be on the employer's premises, even when not engaged in work activities. Because the relevant portion of §31-76b(2)(A) provides that, with the exception of meal breaks, " '[h]ours worked' include all time during which an employee is required by the employer to be on the employer's premises," regardless of whether "work is provided by the employer," it is unnecessary to ascertain the meaning of the word "work" in isolation, as it appears elsewhere in the statute.[8]

Amazon also claims that the statute is ambiguous when construed in connection with related statutes. According to Amazon, a broad definition of "hours worked" is incompatible with the definition of "wages" in §31-71a(3) as "compensation for labor or services" because an employee does not provide his employer with labor or services while undergoing security screenings. This argument is flawed because, "when more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal

---

[8] Amazon also argues that the statute is ambiguous because "the Second Circuit already concluded that Connecticut's wage and hour statutory scheme is susceptible to more than one reasonable interpretation" in its decision certifying the questions sub judice. See *Del Rio* v. *Amazon.com. dedc, LLC*, supra, 132 F.4th 177. We reject this claim because it confuses the certified question for the answer to that question. The Second Circuit did not conclude that the language of the statute was ambiguous under §1-2z; instead, it determined that there was "no Connecticut state court decision that has provided an authoritative answer to the question[s]" certified for review. Id. An analysis of whether a Connecticut statute is ambiguous is a legal question integral to the task of statutory construction under §1-2z. We read the Second Circuit decision as addressing a separate and distinct question, namely, whether there is authoritative state law that would enable a federal court to predict "how the state's highest court would resolve the state law question[s]" presented in this case. (Internal quotation marks omitted.) Id., 176.

354 Conn. 151        FEBRUARY, 2026        169

Del Rio *v.* Amazon.com Services, Inc.

quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 493, 119 A.3d 522 (2015). The words "labor" and "services" are not defined in the statutory scheme, so "we look to contemporaneous dictionary definitions of [these] words to ascertain their commonly approved usage." *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021); see General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). Here, we need look no further than the meaning of the word "service," which has a capacious definition that encompasses many things, including, but not limited to, "an act done for the benefit or at the command of another . . . ." Webster's Third New International Dictionary (1966) p. 2075; see also The Random House Dictionary of the English Language (Unabridged Ed. 1966) p. 1304 (defining "service," in relevant part, as "an act of helpful activity; help; aid"). An employee who remains on an employer's premises at the command of the employer to undergo a mandatory security screening is providing that employer with a service compensable by the payment of wages under the statutory scheme. We perceive no ambiguity in the relevant statutory provision.[9]

Alternatively, Amazon claims that the plain language of § 31-76b (2) (A) yields absurd or unworkable results

_____

[9] In a similar vein, Amazon contends that the definition of "workweek" in General Statutes § 31-76c combined with the definition of "employee" in § 31-76b (3) renders the statutory scheme ambiguous because those definitions indicate that the time an employee spends on an employer's premises is compensable only if that time is spent working. We again are not persuaded. Section 31-76c provides that "[n]o employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The term "employee" is defined as, among other things, "any individual employed or permitted to work by an employer"; General Statutes § 31-58 (e); and "employ" means "to employ or suffer to work . . . ." General Statutes § 31-58 (g); see also General Statutes § 31-76b (3). This argument fails because the meaning of these various provisions all depend, in pertinent part, on the meaning of the word

Del Rio *v.* Amazon.com Services, Inc.

because it would be unreasonable and impractical to expect employers to keep track of the time that their employees spend undergoing mandatory security screenings on the employers' premises. "In determining whether a statute is ambiguous or absurd, § 1-2z directs us not to consult extratextual sources, including the legislative history and circumstances surrounding its enactment or the legislative policy it was designed to implement . . . ."[10] (Internal quotation marks omitted.) *State* v. *Moore*, 352 Conn. 912, 919, 336 A.3d 1222 (2025); see General Statutes § 1-2z; see also *Rivers* v. *New Britain*, 288 Conn. 1, 18–19 and n. 17, 950 A.2d 1247 (2008). "A statute is absurd if, although not literally impossible to effectuate, the result of an unambiguous interpretation is so bizarre, impracticable, or contrary to common sense that one cannot reasonably assume that [it] reflect[s] the considered intent of the legislature." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 929. A statute is "unworkable" if it is "not capable of being put into practice successfully." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, supra, 17. "Concluding that a certain construction of statutory provisions is bizarre, absurd, or unworkable is strong medicine" that

"employ," which, according to common usage, means "to make use of . . . to use or occupy (as time) advantageously . . . [and] to use or engage the services of . . . ." Webster's Third New International Dictionary, supra, p. 743; see also The Random House Dictionary of the English Language, supra, p. 468 (defining "employ" as "to use the services of (a person or persons); have or keep in one's service . . . to keep busy or at work; engage the attentions of . . . to make use of (an instrument, means, etc.); use; apply . . . to occupy or devote (time, energies, etc.)"). An employer who makes use of its employees' time by requiring those employees to undergo mandatory security screenings on its premises plainly "employs" its employees for "hours worked" within the meaning of § 31-76b (2) (A) and (3) and § 31-76c.

[10] A court analyzing whether a statute is absurd or unworkable under § 1-2z may consider the legislative purpose of the statute if that purpose is manifest in the statutory text itself. See *Rivers* v. *New Britain*, 288 Conn. 1, 19 n.17, 950 A.2d 1247 (2008) (observing that "there is nothing in § 1-2z that prohibits us from ascertaining the purpose of [a statute] . . . from its plain language," and holding that unambiguous meaning of statute was unworkable based, in part, on "the public safety purpose" that was "obvious from the statutory language").

Del Rio *v.* Amazon.com Services, Inc.

is appropriate only when "it is *quite impossible that* [*the legislature*] *could have intended the result* and [when] the alleged absurdity is so clear as to be obvious to most anyone." (Emphasis added; internal quotation marks omitted.) *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 360, 324 A.3d 780 (2024); see id. ("[a] statute is not absurd [or unworkable] merely because it produces results that a court or litigant finds anomalous or perhaps unwise" (internal quotation marks omitted)); 2A N. Singer & S. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2014) § 45:12, p. 122 ("[t]his departure from literalism, generally known as 'the absurd results doctrine,' should be used sparingly because it does entail the obvious risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said").

Amazon has failed to demonstrate that it is bizarre, absurd, or contrary to common sense for the legislature to make a policy choice that obligates employers to compensate their employees for time spent undergoing mandatory security screenings on the employers' premises. By requiring its employees to remain on the premises of its fulfillment centers during the mandatory security screening process, Amazon deprives its employees of time that would otherwise be their own. Nor can we conclude that it would be impractical or infeasible for employers to keep track of this time. Amazon has not offered a reason, and we cannot think of one, why it could not place its time clocks at a location outside of the security screening area rather than inside of that area, so that employees could clock out from their shifts after undergoing the mandatory security screening process. Although Amazon questions the wisdom and efficiency of the legislature's expressed policy choice to require employers to pay their employees for the time that those employees are required to be on the employers' premises, including the time that no work is provided, our role is not "to arrogate to ourselves [this policy choice] by bending the statutory language and disregarding our well established and mandatory statutory interpretation

Del Rio *v.* Amazon.com Services, Inc.

principles . . . ." *State* v. *Moore*, supra, 352 Conn. 936; see also *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 215–16, 901 A.2d 673 (2006) ("Whether [a particular legislative policy is] proper . . . is not an issue for this court to resolve. We must construe a statute as written . . . [and we] cannot rewrite a statute to accomplish a particular result. . . . If the legislature desires a different result, it is a legislative function to rewrite the statute to achieve that result." (Citation omitted; internal quotation marks omitted.)).

Amazon relies on various hypothetical scenarios unconnected to the facts of this case to support its absurdity and unworkability arguments, claiming, for example, that construing "hours worked" in §31-76b (2) (A) to include all time that employers require their employees to spend on the employers' premises regardless of whether the employees have been provided with work would make it difficult for employers to control the scope of compensable work and would incentivize employees to intentionally protract their compensable time to the detriment of their employers. For example, Amazon suggests that employees may wait for an elevator instead of taking the stairs or choose a circuitous route to their workstations over a more direct route, resulting in an increase in wages but a decrease in productivity. We fail to see the relevance of these scenarios to the present case, but, even if providing an opportunity for malingering is a potential consequence of our adherence to the plain language of the statute, this court is not the proper forum to address this concern. Balancing the competing costs and benefits of the statutory scheme is a matter of public policy, and "it is well established that the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Adesokan* v. *Bloomfield*, 347 Conn. 416, 446–47, 297 A.3d 983 (2023). "Once the legislature has made its policy choice through statute, we are constrained to interpret the statutory language, not to decide on and implement our own policy choices." Id., 447; see also *Trinity Christian School* v. *Commission on Human*

354 Conn. 151      FEBRUARY, 2026      173

Del Rio *v.* Amazon.com Services, Inc.

*Rights & Opportunities*, 329 Conn. 684, 697–98, 189 A.3d 79 (2018) ("[i]t is not the province of this court, under the guise of statutory interpretation, to legislate . . . a [particular] policy, even if we were to agree . . . that it is a better policy than the one endorsed by the legislature as reflected in its statutory language" (internal quotation marks omitted)). Because "[i]t is the legislature's prerogative to address and remedy" the public policy interests at stake, we will not "import language that we think might make the [statute] more workable, or even more rational." *PPC Realty, LLC* v. *Hartford*, supra, 350 Conn. 361.[11]

For the foregoing reasons, we conclude that the time an employer requires its employees to spend undergoing mandatory security screenings on the employer's premises is compensable as "hours worked" under the plain and unambiguous language of §31-76b (2) (A). We therefore answer the first certified question in the affirmative.

B

*Whether Connecticut's Wage Laws Incorporate a De Minimis Exception*

Amazon next claims that, even if employers must pay their employees for time spent undergoing mandatory security screenings on their premises as "hours worked" under §31-76b (2) (A), that time should be deemed noncompensable under the de minimis exception that has been developed under federal law. Connecticut's statutory and regulatory scheme does not expressly include a de minimis exception, but Amazon contends that it has been incorporated into Connecticut's wage laws implicitly via the fifteen minute rounding rule set forth in

___

[11] Moreover, it is not as if an employer is altogether powerless to stop the type of malingering that Amazon imagines may result from our adherence to the plain language of the statute. Nothing in our wage laws prohibits Amazon from ensuring employee productivity by regulating employee conduct on its premises to the extent permitted by state and federal law.

Del Rio *v.* Amazon.com Services, Inc.

§§ 31-60-11 (a)[12] and 31-60-12 (a)(4)[13] of the Regulations of Connecticut State Agencies and judicial precedent recognizing the de minimis exception, namely, *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 581, and *Nettleton* v. *C & L Diners, LLC*, 219 Conn. App. 648, 296 A.3d 173 (2023).[14] The plaintiff claims in response that the de minimis exception has not been adopted by state statute, regulation, or judicial precedent, and is inconsistent with the statutory requirement that employers pay their employees for "all time" that counts as "hours worked" as defined by § 31-76b (2)(A). We agree with the plaintiffs.

Neither the statutes nor the regulations governing employee wages contains a de minimis exception to compensability.[15] Amazon nevertheless relies on the rounding

[12] Section 31-60-11 (a) of the Regulations of Connecticut State Agencies provides: "For the purpose of this regulation, hours worked include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer. *Working time in every instance shall be computed to the nearest unit of fifteen minutes.*" (Emphasis added.)

[13] Section 31-60-12 (a) (4) of the Regulations of Connecticut State Agencies provides: "For the purpose of this regulation, 'true and accurate records' means accurate legible records for each employee showing . . . (4) the total daily and total weekly hours worked, showing the beginning and ending time of each work period, *computed to the nearest unit of fifteen minutes . . . .*" (Emphasis added.)

[14] Amazon also contends that the recognition of a de minimis exception would avoid absurd or unworkable results. Based on the record before us, we reject this argument for the reasons explained in part III A of this opinion.

[15] Subdivision (3) of § 31-68 (a) of the General Statutes refers to a "de minimis amount of time" that employees who perform both service and nonservice duties spend on nonservice duties "that were not incidental to service duties," but the statute does not implement a de minimis exception to compensability; instead, it restricts the availability of a class action lawsuit as a means to recover unpaid wages on behalf of "other alleged similarly situated persons in a case brought for violations of [the now repealed] section 31-62-E4 of the regulations of Connecticut state agencies . . . ." General Statutes § 31-68 (a) (3). This statute is inapplicable to this case because the plaintiffs are not employees who

354 Conn. 151 FEBRUARY, 2026 175

Del Rio *v.* Amazon.com Services, Inc.

rule in §§ 31-60-11 (a) and 31-60-12 (a) (4) of the Regulations of Connecticut State Agencies to support its argument that small increments of time may be disregarded as noncompensable if they are de minimis. Section 31-60-11 (a) of the regulations incorporates the definition of "hours worked" in § 31-76b (2) (A) and further specifies that "[w]orking time in every instance shall be computed *to the nearest unit of fifteen minutes*." (Emphasis added.) Employers are also required by statute to keep "a true and accurate record of the hours worked by, and the wages paid by him to, each employee"; General Statutes § 31-66; and § 31-60-12 (a) (4) of the regulations provides that "true and accurate records" include, among other things, "the total daily and total weekly hours worked, showing the beginning and ending time of each work period, *computed to the nearest unit of fifteen minutes .* . . ." (Emphasis added.)

The rounding rule and the de minimis exception reflect separate and distinct regulatory policies. Compare 29 C.F.R. § 785.48 (b) (2025) (rounding rule), with 29 C.F.R. § 785.47 (2025) (de minimis exception). The practice of rounding time is different from the practice of disregarding de minimis periods of time. Whereas the de minimis exception permits employers to disregard "insubstantial or insignificant periods of time" if those time periods "cannot as a practical administrative matter be precisely recorded for payroll purposes"; id., § 785.47; the rounding rule permits employers to round employees' time to the nearest five, ten, or fifteen minute increment, so long as "the employees are fully compensated for all the time they actually work."[16] Id., § 785.48 (b). The

_____

perform both service and nonservice duties seeking to recover unpaid wages for nonservice duties.

[16] A state law rounding rule complies with the minimum standard established by federal law only if "it will not result, over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48 (b) (2025); see, e.g., *Aguilar* v. *Management & Training Corp.*, 948 F.3d 1270, 1288 (10th Cir. 2020) (rounding policy is valid only if it is "neutral, both facially and as applied," and "allow[s] for rounding both up and down, so that an employee is sometimes compensated for time not spent working, and

Del Rio *v.* Amazon.com Services, Inc.

idea underlying the rounding rule is that, because time is rounded either up or down to the nearest increment, any discrepancies between the number of hours worked and the number of hours recorded will average out over time, resulting in full compensation for all hours worked. See, e.*g.*, *Aguilar* v. *Management & Training Corp.*, 948 F.3d 1270, 1287–88 (10th Cir. 2020); *See's Candy Shops, Inc.* v. *Superior Court*, 210 Cal. App. 4th 889, 901–902, 148 Cal. Rptr. 3d 690 (2012), review denied, California Supreme Court, Docket No. S207212 (February 13, 2013).

The rounding rule is not an exception to compensability. To the contrary, it is a procedural mechanism intended to result in full compensation. Unlike the de minimis exception, the rounding rule does not exempt from employee wages otherwise compensable time on the ground that it is negligible, trivial, or inconsequential. The rounding rule effectuates the statutory requirement to compensate employees for all "hours worked" under § 31-76b (2) (A). Cf. 29 C.F.R. § 785.48 (b) (2025). We therefore conclude that the rounding rule does not incorporate the de minimis exception.

Alternatively, Amazon claims that we adopted the de minimis exception in *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 581, in which we stated that one "hurdle facing an employee seeking recovery for travel time under the *Portal-to-Portal Act* is that, in order for an employee to be entitled to payment for the time, the amount of compensable time must not be de minimis." (Emphasis added.) Id., 600 n.16. As the emphasized language makes evident, the discussion of the de minimis exception in *Sarrazin* referred to compensability under the FLSA, as amended by the PTPA, not to compensability under Connecticut's statutory and regulatory scheme. The issue in *Sarrazin* was whether federal law preempted

sometimes not compensated for time spent working" (internal quotation marks omitted)).

354 Conn. 151       FEBRUARY, 2026       177

Del Rio *v.* Amazon.com Services, Inc.

state wage laws concerning the compensability of time employees spend commuting between work and home. To resolve the preemption issue, we "compare[d] the relevant federal and state provisions to determine whether our state laws meet the national floor." Id., 596. In examining the national floor, we opined that, under the FLSA, as amended by the PTPA, employees must demonstrate that "the amount of compensable time [is not] de minimis." Id., 600 n.16. Because our discussion of the de minimis exception in *Sarrazin* pertained exclusively to the compensability of wage claims brought under federal law, it does not support Amazon's argument.[17]

Amazon points out that the Appellate Court recently applied the de minimis exception in *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 648. That case, too, is readily distinguishable. In *Nettleton*, a restaurant

---

[17] Amazon also relies on the concurrence in *Sarrazin*, which construed § 31-60-10 (b) of the Regulations of Connecticut State Agencies to include "travel time during an employee's usual commute as working time under the admittedly limited circumstances set forth [in the regulation]." *Sarrazin* v. *Coastal, Inc.*, supra, 311 Conn. 622 (*McDonald*, *J.*, concurring). Section 31-60-10 (b) provides in relevant part that, "[w]hen an employee, in the course of his employment, is required or permitted to travel for purposes which inure to the benefit of the employer, such travel time shall be considered to be working time and shall be paid for as such. . . ." Although the majority in *Sarrazin* construed the regulation to exclude from compensability all time that employees spent commuting between work and home, the concurrence concluded that commuting time was compensable under the regulation "if an employer has required an employee to perform services during his commute that are related to his employment, that inure to the employer's benefit, and that impose burdens on the employee such that the time is not the employee's to use for his or her own purposes." *Sarrazin* v. *Coastal, Inc.*, supra, 622 (*McDonald*, *J.*, concurring). The concurrence, however, would have excluded from compensable time "an activity incidental to the employment that conferred a *de minimis* benefit on the employer and that imposed no greater burden on the employee than that incurred in his or her usual commute or imposed even a *de minimis* burden . . . ." (Emphasis added.) Id., 623 (*McDonald*, *J.*, concurring). Although the concurrence suggested that a de minimis exception applied for purposes of determining travel time under § 31-60-10 (b) in light of the regulatory language of that provision, neither the majority nor the concurrence in *Sarrazin* expressly recognized a de minimis exception as generally applicable to Connecticut's wage laws.

Del Rio *v.* Amazon.com Services, Inc.

server brought an action against her employer for its alleged failure to segregate her service and nonservice duties in violation of § 31-62-E4 of the Regulations of Connecticut State Agencies (E4 claim) and to properly record her tips in the wage records in violation of § 31-62-E3 of the regulations. See id., 654–56. After concluding that the trial court properly had rendered judgment in favor of the server on her E4 claim; id., 678; the Appellate Court proceeded to address the employer's defense that the regulatory violation was de minimis. Id., 700. The court noted that the employer's de minimis argument had been briefed inadequately on appeal because it failed to "set forth a plain statement of the de minimis doctrine or [to] identify the factors courts ordinarily consider in determining whether it applies in a particular case." Id., 704. The court nonetheless reached the merits of the employer's de minimis claim and, relying on federal law, concluded that the trial court had properly rejected it on the record facts. Id., 705–707. Because the alleged violation of § 31-62-E4 was not de minimis, the court held that the exception did not apply. Id., 707.

*Nettleton* never addressed the issue before us, which is whether Connecticut's wage laws incorporate the federal de minimis exception, because, in that case, the parties did not raise, brief, or argue that issue. Instead, the Appellate Court decided the case on the undisputed assumption that Connecticut law followed federal law and recognized a de minimis exception. "[A] case stands only for those points explicitly covered in a decision"; *State* v. *DellaCamera*, 166 Conn. 557, 561, 353 A.2d 750 (1974); and, in *Nettleton*, the Appellate Court never considered, and thus never decided, whether the de minimis exception had been incorporated into our wage laws implicitly by way of judicial construction. See, e.g., *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 716–17, 729, 734, 295 A.3d 889 (2023) (holding that heart and hypertension benefits under General Statutes § 7-433c are limited to " 'member[s],' " as defined by General Statutes § 7-425 (5), and distinguishing prior cases that did not specifically "involve the construction of the

354 Conn. 151 FEBRUARY, 2026 179

Del Rio *v.* Amazon.com Services, Inc.

word 'member'"); *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739 ("[i]t is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal"), cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

We find no support in our statutes, regulations, or case law for the recognition of a de minimis exception in the present context. Although Amazon and the amici curiae[18] raise various public policy arguments that favor adopting a de minimis exception, it is not our role to formulate and implement public policy, particularly in areas in which the legislature and the relevant regulatory agency have acted and chosen not to do so. See *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]n areas [in which] the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature"); *Nichols* v. *Salem Subway Restaurant*, 98 Conn. App. 837, 846, 912 A.2d 1037 (2006) ("[t]he legislature speaks on matters of public policy through legislative enactments and through the promulgation of regulations by state agencies as authorized by statute" (internal quotation marks omitted)); see also *Sic* v. *Nunan*, 307 Conn. 399, 410, 54 A.3d 553 (2012) (declining to adopt rule "requiring Connecticut drivers to keep their wheels pointed in a particular direction when stopped at an intersection" because neither the legislature nor "the [D]epartment of [M]otor [V]ehicles— the agency tasked with the promotion of public safety and security through the regulation of drivers . . . has . . . deemed it necessary or appropriate" (citations omitted)).[19]

We conclude that Connecticut wage laws do not incorporate a de minimis exception to compensability, and,

---

[18]The National Retail Federation, the Chamber of Commerce of the United States of America, the National Association of Manufacturers, the National Federation of Independent Business, Inc., and the Connecticut Business & Industry Association filed a brief in support of Amazon.

[19]As explained previously in this opinion, neither the legislature nor the state Department of Labor has followed the lead of the United States Department of Labor and codified a de minimis exception by

Del Rio *v.* Amazon.com Services, Inc.

therefore, we answer the second certified question in the negative.

The first certified question is answered in the affirmative.

The second certified question is answered in the negative.

No costs shall be taxed in this court to any party.

In this opinion the other justices concurred.

———————————

statute or regulation, even though more than sixty years have passed since the adoption of 29 C.F.R. § 785.47. This history confirms that, in the absence of a truly absurd or unworkable result, which has not been demonstrated here, we should not judicially fashion such an exception to the plain wording of § 31-76b (2) (A). Recognizing a de minimis exception is a matter of public policy, and the adoption of policy choices in this highly regulated sphere is a matter for the legislature or the appropriate regulatory agency. See, e.g., *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 309 Conn. 412, 435, 72 A.3d 13 (2013) ("[C]ourts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.)).